# 26-2297

## In the United States Court of Appeals for the Second Circuit

COINBASE FINANCIAL MARKETS, INC.
*Plaintiff-Appellant*

v.

WILLIAM TONG, ET AL.
*Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
No. 3:25-cv-2121 (Oliver, J.)

**DEFENDANTS-APPELLEES' MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR INJUNCTION PENDING APPEAL**

WILLIAM TONG
ATTORNEY GENERAL

Joseph Gasser
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
Ph: 860-808-5400
Fax: 860-808-5593
Email: joseph.gasser@ct.gov

August 28, 2026

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

STATEMENT OF THE CASE .......... 2

LEGAL STANDARD .......... 3

ARGUMENT .......... 4

CONCLUSION .......... 8

## TABLE OF AUTHORITIES

### Cases

*Agudath Israel of Am. v. Cuomo*, 980 F.3d 222, 226 (2d Cir. 2020) ..... 3, 5

*Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1129 (9th Cir. 2024) ....... 6

*KalshiEX LLC v. Martin*, No. 25-cv-1283, 2025 U.S. Dist. LEXIS 147815, at *1 (D. Md. Aug. 1, 2025) ........ 2

*KalshiEx, LLC v. Hendrick*, No. 2:25-cv-575, 2025 U.S. Dist. LEXIS 234246, at *32 (D. Nev. Nov. 24, 2025) ........ 2

*Maryland v. King*, 567 U.S. 1301, 1303 (2012) ........ 7

*Mt. Valley Pipeline, LLC v. 6.56 Acres*, 915 F.3d 197, 219 (4th Cir. 2019) ........ 6

*N. Am. Derivatives Exch., Inc. v. Nevada ex rel. Nev. Gaming Ctrl. Bd.*, No. 2:25-cv-978, 2025 U.S. Dist. LEXIS 202104, at *1 (D. Nev. Oct. 14, 2025) ........ 3

*Robinhood Derivatives, LLC v. Dreitzer*, No. No. 2:25-cv-1541, 2025 U.S. Dist. LEXIS 231144, at *1 (D. Nev. Nov. 25, 2025) ........ 2

*Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003) ........ 6

*Tom Doherty Associates v. Saban Entertainment*, 60 F.3d 27, 38 (2d Cir. 1995) ........ 5

*Walden v. Kosinski*, 153 F.4th 118, 134 (2d Cir. 2025) ........ 3, 4

## PRELIMINARY STATEMENT

Coinbase Financial Markets, Inc.'s ("Coinbase") Motion for Injunction Pending Appeal ("Motion," "Mot.") mirrors that of KalshiEX, LLC in *KalshiEX, LLC v. Cafferelli*, No. 26-2239, because Coinbase's claim arises from its offer of the same Kalshi-listed sports event contracts at issue in that case. Thus, Defendants-Appellees[1] ("Defendants") respectfully incorporate here and rely on their briefing in opposition to Kalshi's motion [ECF 29.1] (Exhibit A hereto). (Defendants consent to Coinbase's request for referral to the same 3-Judge panel hearing Kalshi's motion.)

In addition, Defendants note that Coinbase's Motion stands on even weaker footing than Kalshi's. Coinbase chose to enter the "sports event contract" fray *after* the Connecticut Department of Consumer Protection issued a cease-and-desist letter to Kalshi and other prediction contract offerors about such contracts. This makes even clearer that, in addition to not making a "strong showing" on the merits and being unable to

---

[1] Defendants-Appellees are William Tong, the Connecticut Attorney General; Bryan Cafferelli, the Connecticut Commissioner of Consumer Protection; and Kristofer Gilman the Director of the Gaming Division of the Connecticut Department of Consumer Protection.

justify an injunction in the face of public policy and the equities, any harm Coinbase claims is speculative and self-inflicted, and therefore does not support its demand for an injunction.

## STATEMENT OF THE CASE

Coinbase filed this action on December 18, 2025, after the Connecticut Department of Consumer Protection ("DCP") sent a cease-and-desist letter to Kalshi and others advising them that the unlicensed offer of sports wagers (so-called "sports event contracts") violated Connecticut law. Coinbase alleged that it intended to enter a partnership with Kalshi to offer Kalshi's sports wagers as a Futures Commission Merchant ("FCM"), including Kalshi's "sports event contracts," to "its millions of users" in January of 2026 [ECF 1 ¶¶ 4-5]. Importantly, Coinbase's entry into the event contract space postdated not only DCP's cease-and-desist letter, but multiple federal court decisions denying "sports event contracts" protection from State gaming laws.[2] After the District Court denied Coinbase a preliminary injunction

[2] *Robinhood Derivatives, LLC v. Dreitzer*, No. No. 2:25-cv-1541, 2025 U.S. Dist. LEXIS 231144, at *1 (D. Nev. Nov. 25, 2025); *KalshiEX LLC v. Martin*, No. 25-cv-1283, 2025 U.S. Dist. LEXIS 147815, at *1 (D. Md. Aug. 1, 2025); *KalshiEx, LLC v. Hendrick*, No. 2:25-cv-575, 2025 U.S. Dist. LEXIS 234246, at *32 (D. Nev. Nov. 24, 2025); *N. Am. Derivatives*

against enforcement of State law, concluding it had failed to meet every one of the elements for an injunction [ECF 93], Coinbase appealed to this Court and filed the instant Motion, in support of which it generally relies on Kalshi's arguments.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Walden v. Kosinski*, 153 F.4th 118, 134 (2d Cir. 2025) (cleaned up). "[A]n injunction issued in the first instance by an appellate court….demands a significantly higher justification than a request for a stay because, unlike a stay, an injunction does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts." *Agudath Israel of Am. v. Cuomo*, 980 F.3d 222, 226 (2d Cir. 2020). Even to obtain a stay pending appeal, "more is required [than a preliminary injunction in the District Court], including a strong showing that the movant is likely to succeed on the merits." *Id.* (cleaned up).

---

*Exch., Inc. v. Nevada ex rel. Nev. Gaming Ctrl. Bd.*, No. 2:25-cv-978, 2025 U.S. Dist. LEXIS 202104, at *1 (D. Nev. Oct. 14, 2025).

Where an appellant "seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme," it "must demonstrate a clear or substantial likelihood of success on the merits," that it is "likely to suffer irreparable harm" without an injunction, that the "balance of the equities tips in [its] favor," and that an "injunction serves the public interest." *Walden*, 153 F.4th at 134.

## ARGUMENT

In addition to incorporating the arguments made in opposition to Kalshi's Motion, Defendants respond to the different or additional arguments presented by Coinbase. Coinbase, like Kalshi, is unable to establish an entitlement to the "extraordinary and drastic" relief of an injunction pending appeal, in significant part because it makes a notably weak claim of irreparable harm.

### A. Coinbase Fails to Make a "Strong Showing" of Likelihood of Success on the Merits.

Coinbase's arguments as to the merits are virtually identical to Kalshi's. Defendants note, however, that Coinbase applies the wrong standard. It is not the typical preliminary injunction standard that controls on appeal, Mot. 5-6, but a "significantly higher" standard

requiring "a strong showing that the movant is likely to succeed on the merits." *Agudath Israel*, 980 F.3d at 226 (cleaned up). Coinbase, like Kalshi, cannot make even the lower showing of a "likelihood of success," let alone a "strong showing."

**B. Coinbase Fails to Demonstrate Irreparable Harm.**

Coinbase relies on Kalshi's arguments as to irreparable harm, but its claim of irreparable harm is notably weaker than Kalshi's. Coinbase has not offered any evidence to conclude that it will suffer irreparable harm, particularly because it still fails to demonstrate that offering sports event contracts is an established part of its business. Further, Coinbase's supposed harm is self-inflicted.

First, as with Coinbase's December 2025 Motion for Preliminary Injunction, its Motion fails to offer more than speculation that it will suffer irreparable harm absent an injunction. Coinbase has not demonstrated that sports event contracts are anything more than a new and unproven line of business for it. Accordingly, it must, but cannot, show that such contracts are a "truly unique opportunity" for it, or that it has no "reasonable substitute[]" for them, as required by *Tom Doherty Associates v. Saban Entertainment*, 60 F.3d 27, 38 (2d Cir. 1995). In

December 2025, Coinbase had not even begun offering Kalshi's sports wagers yet [ECF 44 at 8-9.] Now, nearly nine months later, Coinbase still fails to offer any pertinent factual evidence in support of its claim of harm, relying only on an executive's December 2025 affidavit. On this showing, there is no basis to conclude Coinbase will suffer irreparable harm absent an injunction.

Second, Coinbase cannot show irreparable harm because any such harm is self-inflicted. Harm caused by the movant itself does not constitute "irreparable harm" in the injunction analysis. *See Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1129 (9th Cir. 2024) ("when a harm is largely self-inflicted, that fact severely undermines a claim for equitable relief") (cleaned up); *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003) ("self-inflicted wounds are not irreparable injury"); *Mt. Valley Pipeline, LLC v. 6.56 Acres*, 915 F.3d 197, 219 (4th Cir. 2019) ("some forms of 'self-inflicted' harm may be discounted or ignored altogether in the preliminary-injunction analysis") (emphasis added). As discussed above, Coinbase rushed into offering Kalshi's sports wagers in January 2026, *after* DCP's cease-and-desist letter regarding those same wagers, and as litigation over their

legality blossomed nationwide. Coinbase should not now be heard to claim that it will be harmed unavoidably by enforcement of state law that was completely in Coinbase's power to avoid.

As Kalshi did, Coinbase discounts the irreparable harm that *Defendants* will suffer in the event that the Court imposes an injunction at this stage, claiming an injunction will "cost defendants nothing," Mot. 5. Nothing could be further from the truth. Every day that Defendants are enjoined from enforcing duly enacted law for the protection of Connecticut's population, they suffer real, irreparable harm. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); *see also Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018) ("the inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State").

### C. Coinbase Fails to Show the Equities and Public Policy Support an Injunction.

As did Kashi, Coinbase fails to establish that the balance of the equities and public policy support the injunction it seeks. Coinbase offers barely a paragraph on this point, claiming "Connecticut would

suffer no cognizable harm from the brief injunctive relief Coinbase seeks." Mot. 11-12. As discussed above, Coinbase has it backward. Coinbase's claimed inability to offer sports wagers to Connecticut residents, a purely commercial interest, and, as discussed, an unproven one at that, cannot compare to Defendants' interests here.

## CONCLUSION

The Court should deny Coinbase's Motion for extraordinary and drastic injunctive relief because it fails to carry its burden to establish a clear and substantial likelihood of success on the merits, that it will suffer irreparable harm absent an injunction, and that the public interest and balance of the equities favor an injunction.

Respectfully submitted,

COUNSEL FOR
DEFENDANTS-APPELLEES

WILLIAM TONG
ATTORNEY GENERAL

By: *<u>/s/ Joseph Gasser</u>*

Joseph Gasser
Assistant Attorney General
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
P: 860-808-5247
joseph.gasser@ct.gov

## CERTIFICATE OF COMPLIANCE

This filing complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1,583 words, excluding the parts of the motion exempted by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f).

This filing also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been drafted in a proportionally-spaced typeface using Microsoft Word in Century Schoolbook font, 14-point type face.

Date: August 28, 2026

*/s/ Joseph Gasser*
Joseph Gasser

**CERTIFICATE OF SERVICE**

I certify that on August 28, 2026, I caused the foregoing to be electronically filed with the Clerk of the United States Court of Appeals for the Second Circuit by using the ACMS.

Date: August 28, 2026

*/s/ Joseph Gasser*
Joseph Gasser